**[J-85-2024] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| HENRY EARL FERGUSON, | : | No. 73 MAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated |
| | : | December 22, 2021 at No. 123 CD |
| v. | : | 2021 Affirming the Order of the |
| | : | Cumberland County Court of |
| | : | Common Pleas, Civil Division, dated |
| COMMONWEALTH OF PENNSYLVANIA, | : | January 21, 2021 at No. 2020-4835 |
| DEPARTMENT OF TRANSPORTATION, | : | CV. |
| BUREAU OF DRIVER LICENSING, | : | |
| | : | ARGUED:  November 19, 2024 |
| Appellee | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                                   **DECIDED:  July 22, 2025**

In 2012, Henry Ferguson was charged with driving under the influence ("DUI").[1] That charge was dismissed after Ferguson successfully completed the Accelerated Rehabilitative Disposition ("ARD") program.[2]  In 2020, Ferguson was arrested again for DUI.  Ferguson pleaded guilty to this second DUI as an ungraded misdemeanor.[3]  He was sentenced to six months of supervised probation and was ordered to pay a $300 fine. Pursuant to 75 Pa.C.S. § 3804(e)(2)(iii), had this been Ferguson's first DUI, PennDOT

---

[1]      *See generally* 75 Pa.C.S. § 3802.

[2]      *See generally* Pa.R.Crim.P. 300-320.

[3]      *See* 75 Pa.C.S. § 3803(a)(1) (grading DUI as a "misdemeanor" when the offender "has no more than one prior offense").

would not have suspended Ferguson's driver's license.[4]  However, because 75 Pa.C.S. § 3806(a) of the Motor Vehicle Code treats participation in ARD as a "prior offense," PennDOT suspended Ferguson's license for one year.  Ferguson has appealed that suspension, without success to date.  He argues here that predicating license suspensions upon previous participation in ARD, a program in which the defendant neither admits guilt nor is found guilty by a jury or judge, constitutes a "due process" violation.  The Majority discerns no constitutional infirmity with the statute.  I agree.  However, I arrive at this conclusion by way of an approach that differs from the Majority's.  Thus, I concur only in the result.

ARD "is a pretrial disposition of certain cases, in which the attorney for the Commonwealth agrees to suspend prosecution for an agreed upon period of time in exchange for the defendant's successful participation in a rehabilitation program, the content of which is to be determined by the court and applicable statutes."[5]  This Court created ARD as a diversionary program upon the belief that some non-violent first-time offenses "lend themselves to treatment and rehabilitation rather than punishment."[6]  With ARD, a defendant avoids the costs and risks of a criminal trial, and, upon satisfaction of the supervisory and rehabilitative terms and conditions of ARD, his or her arrest record is expunged and the charges are dismissed.[7]

---

[4]    *See* 75 Pa.C.S. § 3804(e)(2)(iii) (imposing no driver's license suspension upon a conviction for DUI when graded as an ungraded misdemeanor so long as "the person has no prior offense").

[5]    *Commonwealth v. Lutz*, 495 A.2d 928, 931 (Pa. 1985).

[6]    Pa.R.Crim.P. Ch. 3 cmt; *see also Lutz*, 495 A.2d at 931 (explaining that ARD was created to quickly dispose of minor cases that "can best be solved by programs and treatments rather than by punishment") (quoting former Pa.R.Crim.P. 185 cmt.).

[7]    Pa.R.Crim.P. 320(A) ("When the judge orders the dismissal of the charges against the defendant, the judge shall also order the expungement of the defendant's arrest record . . . .").

However, participation in ARD is not without consequence, particularly when the defendant re-offends. Under subsection 3806(a) of the Motor Vehicle Code, for instance, acceptance into the ARD program constitutes a "prior offense."[8] This designation has (at least) two significant consequences. First, when a defendant who previously has been accepted into ARD is convicted of a subsequent DUI, he or she will be sentenced to heightened penalties as a second-time DUI offender.[9] Second, under 75 Pa.C.S. § 3804(e)(2)(iii), a second-time offender with an ARD-related "prior offense" will sustain a driver's license suspension.[10]

Both of these consequences emanate from the General Assembly's choice to designate participation in ARD as a "prior offense."[11] But they are not one and the same for purposes of constitutional challenge. The former is criminal in nature, and is constrained by the Sixth Amendment's guarantee of trial before an "impartial jury."[12] The right to jury trial—a "bulwark between the State and the accused"[13] in a criminal case—"requires that each element of a crime be proved to the jury beyond a reasonable doubt."[14]

---

[8] 75 Pa.C.S. § 3806(a).

[9] *See* 75 Pa.C.S. § 3804(a)(2) (setting forth the penalties for a DUI offender's "second offense"). Recently, in *Commonwealth v. Shifflett*, 2025 WL 1554603, ___ A.3d ___ (Pa. 2025), we found the statutory practice of treating ARD as a first offense for sentencing purposes to be unconstitutional, *id.* at ---, an issue that we had considered, but had been unable to resolve, two years ago. *See Commonwealth v. Verbeck*, 290 A.3d 260 (Pa. 2023) (*per curiam*).

[10] *See* 75 Pa.C.S. § 3804(e)(2)(iii) (imposing no driver's license suspension upon a conviction for DUI when graded as an ungraded misdemeanor so long as "the person has no prior offense").

[11] *Id.* § 3806(a).

[12] U.S. CONST. amend. VI.

[13] *Oregon v. Ice*, 555 U.S. 160, 168 (2009) (citation omitted).

[14] *Alleyne v. United States*, 570 U.S. 99, 104 (2013) (citations omitted).

Before 1999, this constitutional mandate was understood to apply only to the statutory elements of the substantive crime, as drafted by the legislatures charged with writing the law. However, in *Jones v. United States*,[15] the Supreme Court of the United States first became concerned that "Sixth and Fourteenth Amendment principles raised serious questions regarding the constitutionality of sentencing practices that allowed judges to make factual findings which increased an offender's sentence."[16] The Court addressed the issue directly the next year in *Apprendi v. New Jersey*.[17] In *Apprendi*, the Court held that, for purposes of the Sixth Amendment, "facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense."[18] The Court ruled that "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" must be "submitted to a jury, and proved beyond a reasonable doubt."[19]

Three years later, in *Alleyne*, the Supreme Court of the United States held that *Apprendi*'s rule applies not just to facts that result in a sentence exceeding the statutory maximum, but also to facts that increase criminal sentences generally or trigger mandatory minimum sentences.[20] Thus, for Sixth Amendment purposes, the combination of the "core crime" and a fact that increases the defendant's sentence "together constitute a new, aggravated crime, each element of which must be submitted to the jury."[21]

---

[15]    526 U.S. 227 (1999).

[16]    *Commonwealth v. Verbeck*, 290 A.3d 260, 284 (Pa. 2023) (Wecht, J., Opinion in Support of Affirmance).

[17]    530 U.S. 466 (2000).

[18]    *Id.* at 483 n.10.

[19]    *Id.* at 490.

[20]    *Alleyne*, 570 U.S. at 111-12.

[21]    *Id.* at 113.

There is only one exception to the *Apprendi/Alleyne* rule: the fact of a prior conviction.[22] The reason that prior convictions are excluded from the general rule, the Court has explained, is because such prior convictions historically have been considered to be "sentencing factors," not implicit elements of a new, aggravated crime.[23] A prior conviction relates to a particular defendant's propensity to recidivate, which "goes to punishment only," not to "the commission of the [present] offense."[24]

ARD is a diversionary program. The ARD participant is not convicted of any crime. He or she neither admits guilt, nor admits that there are facts sufficient to prove him or her guilty of a crime. The charges are set aside while the person participates in the program. Nonetheless, participation in the program counts as a prior offense for purposes of the heightened DUI penalties for second-time offenders. Whether ARD can be used in this way requires a consideration of whether ARD is the functional equivalent of a prior conviction, which would not raise Sixth Amendment concerns, or whether ARD instead constitutes an element of a new "aggravated crime" that must be submitted to a jury. Until recently, resolution of that question stymied this Court.[25] Recently, in *Shifflett* (*see supra* n.9), we decided that the latter of these two interpretations is correct.

Here, however, we answer a different question. Ferguson challenges the use of ARD as a determinative factor for purposes of suspending a driver's license. This argument is civil in nature. It implicates constitutional provisions and interests that lie outside the *Apprendi/Alleyne* domain. Suspension of a driver's license is a "collateral civil penalty administratively imposed by" PennDOT pursuant to the dictates of "the Motor

---

[22] *See United States v. Almendarez-Torres*, 523 U.S. 224 (1998).

[23] *Id.* at 243.

[24] *Id.* at 244.

[25] *See Verbeck*, 290 A.3d at 261 (affirming the lower court in a *per curiam* disposition due to "the Court being equally divided").

Vehicle Code *not* the Crimes Code."[26]  It is a "civil sanction," not a criminal sentence.[27]
The *Apprendi/Alleyne* construct plays no role in analyzing the constitutional implications
of using ARD in this manner.  Instead, Ferguson's argument takes the form of a
"substantive due process" challenge.  This rubric has been invoked to protect individuals
against unjust and arbitrary laws by examining the propriety of the relationship between
the legislative ends and the means chosen by the lawmakers to achieve those ends.[28]
Such a challenge does not arise under the Sixth Amendment to the United States
Constitution.  Instead, it is grounded upon the Fourteenth Amendment to the United
States Constitution[29] and Article I, Sections 1 and 11 of the Pennsylvania Constitution.[30]

These two lines of argument implicate distinct constitutional provisions, interests,
and analyses.  Aside from the fact that both the *Apprendi/Alleyne* argument and the
argument of Ferguson here originate from a defendant's participation in ARD, the two
challenges do not overlap.  Resolution of one does not compel, or even influence,
resolution of the other.  Although we recently held that ARD cannot be used as a fact that
increases a defendant's criminal sentence without that fact first being submitted to a
jury,[31] it does not necessarily follow that ARD also cannot be used as a basis to suspend
a driver's license.  Ferguson's argument here must be confined to its proper lane.  We
should not venture into any comparison between ARD and prior convictions, nor should
we consider what rights a defendant waives (or does not waive) by agreeing to the terms

---

[26]     *Commonwealth v. Wolf*, 632 A.2d 864, 867 (Pa. 1993).

[27]     *Id.*

[28]     *See Shoul v. PennDOT*, 173 A.3d 669, 676 (Pa. 2017).

[29]     U.S. CONST. amend XIV.

[30]     PA. CONST. art. I, § 1.

[31]     *See supra* n.9.

and conditions of ARD.[32]  The only relevant inquiry for us in this case is whether the General Assembly's decision to include ARD within the definition of a "prior offense" for purposes of a license suspension violates "due process."

Ferguson challenges the statute under the Pennsylvania Constitution.  But to call this a "due process" argument is to perpetuate a long-standing misnomer.  The Pennsylvania Constitution does not have a "due process" clause.  That is not to say that our Commonwealth's Constitution protects individuals from arbitrary and unjust laws with any less zeal than the Fourteenth Amendment.  That protection is grounded not in some unstated and amorphous "due process" principle conjured from federal penumbras and emanations then engrafted upon Pennsylvania's constitutional jurisprudence.  Rather it is founded instead in our own Article I, Sections 1 and 11.  The former states that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."[33]  The latter provides that "every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law."[34]

When this Court continues to mischaracterize arguments arising under our own Constitution as "due process" challenges, we perpetuate the mistaken assumption that our Constitution is nothing more than a dependent derivative of the federal Constitution, a weak, me-too sidekick that mindlessly trudges along in lockstep wherever the United

---

[32]     *See* Maj. Op. at 12 ("We also cannot overlook that the new DUI charge arose after the driver, who had the right in relation to the earlier charge to require the Commonwealth to prove his guilt of every element of the offense to a jury beyond a reasonable doubt, voluntarily waived that right in favor of ARD and then elected to drive under the influence thereafter." (footnote omitted)).

[33]     PA. CONST. art I, § 1.

[34]     PA. CONST. art. I, § 11.

States Supreme Court's interpretation of the federal Constitution goes. It is high time that we insist that it is no such thing. The Pennsylvania Constitution is an independent charter. It enshrines rights separate and distinct from those protected by the federal Constitution. It was written and ratified long before the federal Constitution. It was drafted with the unique and particular interests of Pennsylvanians in mind. For over a century, state courts have tended to consult the federal Constitution before analyzing their own constitutions.[35] This was erroneous then, and it is erroneous now. As jurist Hans Linde taught: "Historically the states' commitments to individual rights came first. Restraints on the federal government were patterned upon the states' declarations of rights."[36] State constitutional claims should be evaluated on their own merits, and not merely as afterthoughts or buttresses to validate interpretations of the federal Constitution. A return to Pennsylvania constitutional independence can begin with a simple step here: We should stop referring to claims as "due process" challenges when no due process clause exists under our Constitution.

Regardless of the nomenclature used to describe Ferguson's challenge, the Majority persists in dredging up the so-called *Gambone*[37] "test," and using it to evaluate

---

[35] *See* Justice Hans A. Linde, *First Things First: Rediscovering the States' Bills of Rights*, 9 U. BALT. L. REV. 379, 382-83 (1980); *see also* JEFFREY S. SUTTON, WHO DECIDES? STATES AS LABORATORIES OF CONSTITUTIONAL EXPERIMENTATION 1 (2021) ("For too long, American law has taken a one-sided view of [important constitutional questions], focusing on the US Constitution's answers to these questions and rarely considering, sometimes not considering at all, our fifty state constitutions' answers to them."); *id* at 2 (emphasizing that individual rights do not arise from a single constitutional source and that "[a]ll individual constitutional rights, federal and state, have the potential to protect us"); *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting) ("It is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social an economic experiments without risk to the rest of the country.").

[36] Linde, *supra* n.34, at 382.

[37] *See Gambone v. Commonwealth*, 101 A.2d 634 (Pa. 1954).

the constitutional question. Under this Court's precedents, the *Gambone* test is an inexplicably supercharged version of the traditional rational basis test. Its "heightened rational basis test" compels Pennsylvania courts to examine whether a particular law is "unreasonable, unduly oppressive or patently beyond the necessities of the case."[38] This test, the Majority tells us, is "deferential but less so than if it had been implicated solely under the Fourteenth Amendment to the United States Constitution."[39] Under this idiosyncratic construct, we do not inquire whether a statute is rationally related to a legitimate legislative goal. Instead, we are to "evaluate whether the statute bears a real and substantial relation to the ends sought to be achieved and is neither patently oppressive nor unnecessary to those ends."[40]

I have written extensively about the problems attendant to this "heightened rational basis" test.[41] It is unnecessary to recite here all of the infirmities attendant to this heuristic.[42] A brief summary will suffice. *Gambone* was a latter-day throwback to the United States Supreme Court's *Lochner*[43] era, a benighted jurisprudential epoch during which that Court wielded the federal Due Process Clause as a blunt instrument to strike down economic laws that the Court believed to be "unwise, improvident, or out of harmony with a particular school of thought."[44] In 1955, however, the United States Supreme Court

---

[38] *Id.* at 637; *see also Shoul*, 173 A.3d at 677.

[39] Maj. Op. at 8.

[40] *Id.* (citing *Shoul*, 173 A.3d at 678).

[41] *See*, *e.g.*, *Ladd v. Real Est. Comm'n*, 230 A.3d 1096, 1123 (Pa. 2020) (Wecht, J., dissenting).

[42] *See*, *e.g.*, *Shoul*, 173 A.3d at 688-94 (Wecht, J., concurring); *Ladd*, 230 A.3d at 1116-23 (Wecht, J., dissenting); *PennDOT v. Middaugh*, 244 A.3d 426, 444-47 (Pa. 2021) (Wecht, J., concurring and dissenting).

[43] *See Lochner v. New York*, 198 U.S. 45 (1905).

[44] *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488 (1955).

firmly abandoned *Lochner* (which it had already abandoned in practice long before),[45] and settled on a straightforward rational basis test for federal Due Process analyses.[46] Pennsylvania's Supreme Court took no notice. Instead, "our own *Lochner* era was just beginning."[47] Unfortunately, and maddeningly, that era has not yet ended.

This Court's ongoing devotion to the bygone *Lochner* method of evaluating the constitutionality of statutes is confounding. Rather than upholding a law so long as it is "rationally related to some legitimate government interest,"[48] this Court instead endeavors to determine whether a challenged law is "unreasonable, unduly oppressive or patently beyond the necessities of the case."[49] The test is "amorphous and subject to inconsistent application."[50] It consigns the survival of duly-enacted legislation to a subjective process in which judges decide what is legislatively "wise" or "reasonable." It "validates and encourages judicial overstepping, allowing courts to usurp the legislative role and to strike down laws merely because they are imperfect, unwise, or underinclusive. Surely, some very large proportion of legislative work could fall within one or more of these categories."[51] In this paradigm, there are no bounds upon this Court's ability to strike

---

[45]     *See*, *e.g.*, *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379 (1937) (refusing to apply the *Lochner* method of reviewing legislation when evaluating the constitutionality of a state minimum wage law).

[46]     *Williamson*, 348 U.S. at 488.

[47]     *Ladd*, 230 A.3d at 1118 (Wecht, J., dissenting).

[48]     *Id.* at 1120.

[49]     *Gambone*, 101 A.2d at 637; *see also Shoul*, 173 A.3d at 677.

[50]     *Shoul*, 173 A.3d at 689 (Wecht, J., concurring).

[51]     *Id.* at 692-93 (Wecht, J., concurring).

down statutes. This is not the deference we profess to show to validly enacted legislation.[52]

*Gambone*, and this Court's subsequent "due process" jurisprudence, create a "government by judges," one that empowers "jurists to sit as junior-varsity legislators, questioning the wisdom of laws" written and passed by those elected to perform the policy-making function in our system of government.[53] In doing so, we "deprive the citizens of this Commonwealth of the right to govern themselves."[54] As I wrote in *Shoul*, and again in *Ladd*, and then again in *Middaugh*, I repeat that it "is time to cease adherence to the outdated and overbroad language of *Gambone* in applying the rational basis test in Pennsylvania."[55]

The Majority presses on nonetheless, rummaging around in the Motor Vehicle Code for any indicia that utilizing ARD as a predicate for a license suspension is "unduly oppressive" or is "patently beyond the necessities of the case."[56] This pursuit of the relative wisdom or foolishness of the statute puts the Majority on a wayward path that nonetheless arrives at the correct result.[57] The *Gambone* approach leads the Majority to

---

[52] *See* Maj. Op. at 8 (explaining that the means-end inquiry is deferential).

[53] *Ladd*, 230 A.3d at 1123 (Wecht, J., dissenting).

[54] *Id.*

[55] *Shoul*, 173 A.3d at 692-93 (Wecht, J., concurring).

[56] *Gambone*, 101 A.2d at 637.

[57] That the Majority arrives at the correct result despite its wayward path brings to mind the poetic "Tipsy Coachman" rule:

> The pupil of impulse, it forc'd him along,
> His conduct still right, with his argument wrong;
> Still aiming at honour, yet fearing to roam,
> The coachman was tipsy, the chariot drove home.

(continued…)

assess the constitutionality of a version of the statute not even at issue in this case. As noted above, subsection 3804(e)(2)(iii) of the Motor Vehicle Code imposes no license suspension upon a person convicted of DUI, so long as that DUI is graded as an ungraded misdemeanor.[58] There is one exception: that person cannot have a "prior offense."[59] Nonetheless, the Majority examines the subsection as if "the General Assembly left that narrow exception out" of the statute.[60] Had the General Assembly done so, and instead "simply made a blanket rule that everyone who is convicted of DUI is subject to a suspension of driving privileges," the Majority asserts, then "the entire premise of [Ferguson's] argument [that ARD cannot be used as a punishment] would vanish."[61] This is not the statute that we have. It is not the statute that is under review. The statute that the General Assembly enacted is not a blanket rule. It does have a "prior offense" exception. This frolic and detour is but one example of what occurs when courts use a test with the indeterminate rubric that *Gambone* invites.

We should confine our review to the statute that the General Assembly passed. We should review it—as a matter of state constitutional law—using the traditional rational basis test, which ensures that proper deference is paid to the policy-making branch in our system of government. Application of that test distills to the following question: is the use of ARD as a predicate for a mandatory driver's license suspension in a subsequent DUI

---

Oliver Goldsmith, *Retaliation: A Poem Including Epitaphs on the Most Distinguished Wits of this Metropolis* 8-9 (printed for G. Kearsly, London 1447).

58     *See* 75 Pa.C.S. § 3804(e)(2)(iii) ("There shall be no suspension for an ungraded misdemeanor under section 3802(a) . . . .").

59     *Id.* ("There shall be no suspension for an ungraded misdemeanor under section 3802(a) . . . and the person has no prior offense.").

60     Maj. Op. at 9.

61     *Id.*

case rationally related to the legitimate legislative goal of safety on our highways and roadways.  The answer is:  Yes.

Among other arguments, Ferguson contends that inclusion of ARD in the definition of "prior offense" is fundamentally unfair, as it deprives him of his driver's license, a protected property interest, without a logical or reasonable basis.  Ferguson emphasizes that, because an ARD participant is never found guilty, and never admits guilt, there is no justification for depriving him or her of this property interest.   He maintains that this situation does not differ from that in *Commonwealth v. Chichkin*,[62] a case in which the Pennsylvania Superior Court determined that the state cannot punish a person as if he were guilty when in fact that person never was convicted of any criminal offense.  Ferguson argues that it is fundamentally unfair to use ARD, a program that does not involve any finding of guilt, to deprive him of a protected interest.

Ferguson's attempt to compare the use of ARD as the basis for license suspension to ARD's use in the criminal context is inapt.  Whether ARD can be used to increase a person's sentence and whether it can be used as a basis for license suspension are entirely different questions.  While the fact that admission into ARD does not require a finding of guilt is highly relevant for Sixth Amendment purposes, that does not necessarily matter for purposes of the rational basis test.  All that matters is whether the means chosen by the General Assembly is rationally related to its statutory goal.

The answer to that question is straightforward.  The General Assembly's goal is to promote safety on Pennsylvania's highways and roadways.  One way that the General Assembly has chosen to accomplish that goal is by suspending the driver's license of

---

[62]    232 A.3d 959 (Pa. Super. 2020).  *Chichkin* subsequently was overruled by the Superior Court in *Commonwealth v. Moroz*, 284 A.3d 227 (Pa. Super. 2022) (*en banc*), and in *Commonwealth v. Richards*, 284 A.3d 214 (Pa. Super. 2022) (*en banc*).  However, in *Shifflett*, we held that the rule from *Chichkin* was the correct rule and we abrogated *Moroz* and *Richards*.  *See supra* n.9.

motorists who, in the General Assembly's view, pose a danger to the public. Our legislature has decided that one such motorist is a person who has been arrested for DUI, has completed ARD, and has subsequently been arrested again for DUI. Upon conviction, that person's license automatically is suspended for one year.

Ferguson maintains that a license suspension in this scenario is not rationally related to the General Assembly's goal, because that person's first DUI did not result in a formal criminal conviction. He is incorrect. The legislature is free to decide that a formal conviction is not the only way to demonstrate that a person is a public safety risk. The motorist initially was stopped by police upon suspicion of DUI. He or she likely was placed in handcuffs, transported to jail in a police cruiser, fingerprinted and booked in the jail, incarcerated for a brief period of time, formally charged with the crime, and assigned a date for a preliminary hearing. The arrestee must obtain a lawyer, usually at a significant personal cost, and must live under the stress that necessarily results from pending criminal charges. Then, he or she enters the ARD program, which typically requires remaining crime-free while on probation for at least one year, undergoing a drug and alcohol evaluation, enrolling in an alcohol awareness program, and, if necessary, undergoing inpatient or outpatient treatment. In addition, in order to successfully complete the program, the ARD participant must pay, in full, all court costs, fees, costs of prosecution, and restitution. Undoubtedly, upon completion of all of these terms and conditions, an ARD participant should be well aware of the dangers and consequences of driving under the influence of drugs or alcohol. When, after experiencing the fear and the stress of being arrested for, and charged with, DUI, paying the costs, enduring the probation, and completing drug and alcohol education programs, the motorist nonetheless chooses to drive while under the influence of drugs or alcohol, regardless of whether he or she was found guilty the first time, it is entirely reasonable for the General

Assembly to treat that person as a danger to the public. Suspending that person's driver's license for one year, *i.e.* removing him or her from the roadways, is rationally related to the goal of promoting public safety on the roadways.

Accordingly, I concur in the Majority's result: treating ARD as a "prior offense" for purposes of a license suspension under subsection 3804(e)(2)(iii) of the Motor Vehicle Code does not violate the Pennsylvania Constitution.